**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAZINA CAMERON-SATCHELL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-576** |
| | : | |
| **CDHA MANAGEMENT LLC,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                      **October 21, 2021**

An at-will employee meeting one boss's expectations must understand a new boss may not be satisfied with the same old performance. New bosses may legally impose appropriate job qualifications and independently evaluate performance and terminate for lack of performance so long as the new boss does not terminate to mask discrimination or to retaliate for recent protected conduct. We today address a Black employee claiming a new boss fired her because of her race and retaliated against her because she knew of and reported complaints from other employees and complained of management's treatment of her based on reasons unrelated to her race. She has not shown, after months of discovery, a basis to find her new boss fired her based on her race. The undisputed evidence confirms the new boss fired her because of, among other reasons, failed performance including in the roll-out of a new telephone system forming a central part of her employer's children's dental services business. The former employee cannot show her reporting of other employees' complaints are the but-for cause of her firing. The employee challenges several of her former employer's business reasons, but she does not offer contrary facts. We must follow the undisputed facts confirming the new management's documented concern with her performance. The former employee has not adduced a basis to defeat the former employer's motion for summary judgment on her race discrimination and retaliation claims.

I.      **Undisputed Facts**[1]

CDHA Management LLC, d/b/a Children's Dental Management hired Dazina Cameron-Satchell, a Black woman, beginning in April 2013 as a Call Center Receptionist.[2] Children's Dental promoted Ms. Cameron-Satchell to Head Customer Service Representative in December 2013.[3] It promoted her to Office Supervisor in November 2014, reporting to Practice Manager Brook Murphy.[4] It promoted her in September 2016 to the second Regional Manager for Children's Dental reporting to Practice Manager Murphy.[5]

As a Regional Manager, Ms. Cameron-Satchell supervised the administration of multiple offices. Children's Dental promoted Amy Garris, a white woman, as the first Regional Manager, and promoted Edward Stiefel, a white male, as the third Regional Manager in 2017.[6] The three Regional Managers—Ms. Garris, Ms. Cameron-Satchell, and Mr. Stiefel—reported to Practice Manager Murphy.[7] Children's Dental paid Ms. Cameron-Satchell more than the other two Regional Managers.[8]

*Management changes and control of Children's Dental.*

Private equity firm DFW Capital Partners became the controlling shareholder in Children's Dental in late 2016.[9] Dr. Eric Felix, the owner and founder of Children's Dental, remained a shareholder.[10] Around the time of DFW's controlling investment, Dr. Felix promised promotions to several Children's Dental managers after he closed the DFW deal. Dr. Felix promised Practice Manager Murphy a promotion to a Vice President position and told her to start preparing another employee to take over her duties as Practice Manager.[11] Practice Manager Murphy offered Ms. Cameron-Satchell a move from her Regional Manager position to an undefined operations position with the goal of promoting her to the Practice Manager position after Ms. Murphy assumed a Vice President position.[12] Ms. Cameron-Satchell accepted Ms. Murphy's offer.[13] Practice Manager

Murphy told Ms. Cameron-Satchell to stay in the Regional Manager position on a temporary basis until some unspecified time when she would move into the undefined operations role and, later, the Practice Manager position.[14]

DFW acquired the controlling shares of Children's Dental. It then hired a new executive and management team including creating a formal Human Resources department with Michael O'Donnell as President and Chief Executive Officer;[15] Julie Amos as Integrations Manager;[16] Dodie Regan as Vice President of Human Resources for Children's Dental who assumed all human resources functions from Practice Manager Murphy;[17] and Bridget Jackson as a Human Resource Generalist.[18]

### Changes at Children's Dental in mid-2017 after new management's controlling investment.

New Vice President of Human Resources Regan and President O'Donnell directed Practice Manager Murphy to prepare a new job description for the Regional Manager position.[19] The newly revised Regional Manager position now required a two or four-year business degree or equivalent business experience and at least five years of management experience with primary responsibilities for supervising officer managers in partnership with the Practice Manager to provide leadership, direction, and support to officer managers to ensure financial and operational success.[20]

Neither Ms. Garris nor Ms. Cameron-Satchell met the new qualifications for a Regional Manager position.[21] Practice Manager Murphy requested, and President O'Donnell approved, a $10,000 salary increase for Ms. Cameron-Satchell in June 2017 bringing her annual salary to $75,000.[22] Children's Dental contends Practice Manager Murphy requested the salary increase because she did not want Ms. Cameron-Satchell to leave Children's Dental.[23] Children's Dental did not offer salary increases to the other two Regional Managers, Ms. Garris or Mr. Stiefel.

The prospect for Practice Manager Murphy's promotion to a Vice President position as promised by Dr. Felix began to fade. President O'Donnell told Practice Manager Murphy she would not be promoted to a Vice President position. President O'Donnell instead promoted Ms. Amos, initially hired as Integrations Manager when DFW acquired control over Children's Dental, to Vice President of Dental Operations.[24] Ms. Murphy remained in her position as Practice Manager but no longer supervised the Regional Managers. Children's Dental moved supervision of the Regional Managers to Vice President Amos. Ms. Murphy remained in the position of Practice Manager and Children's Dental no longer needed to train Ms. Cameron-Satchell to take over Ms. Murphy's position.[25]

### Vice President Amos assumes control over Children's Dental operations.

The three Regional Managers—Ms. Garris, Ms. Cameron-Satchell, and Mr. Stiefel—began reporting to Vice President Amos by August 2017. Vice President Amos reported directly to President O'Donnell.[26] Practice Manager Murphy, believing Ms. Garris no longer met the expectations of a Regional Manager, demoted her to an Office Supervisor position in August 2017.[27] Children's Dental ultimately terminated Ms. Garris, a white woman, from the Office Supervisor position six months later in March 2018.[28]

Vice President Amos believed Ms. Cameron-Satchell could not qualify for the Regional Manager position under the revised job description.[29] Vice President Amos also believed Ms. Cameron-Satchell lacked extensive managerial experience and perceived unsuccessful communications with the members of the regional team and office supervisors. Vice President Amos learned of email communications between Ms. Cameron-Satchell and an office supervisor, Kim Tice, which she found to be aggressive and unprofessional, leaving Vice President Amos "appalled" at Ms. Cameron-Satchell's behavior.[30] Vice President Amos received a complaint

about Ms. Cameron-Satchell from employee Fran Thompson, who described her as unprofessional.[31] Human Resource Generalist Jackson received a complaint about Ms. Cameron-Satchell as a Regional Manager from employee Meetu Singh.[32] Human Resource Generalist Jackson saw Ms. Cameron-Satchell crossing her arms, rolling her eyes, huffing, and having trouble controlling herself when disciplining Ms. Singh at a June 2017 meeting.[33] There is no documentation by Children's Dental of these concerns.

Vice President Amos, although concerned about Ms. Cameron-Satchell's qualifications as a Regional Manager, recognized Ms. Cameron-Satchell had "legacy knowledge" about Children's Dental, including a working knowledge of Dentrix, a practice management software.[34] Vice President Amos created a new position for Ms. Cameron-Satchell called Operations Assistant.[35]

Children's Dental demoted the two women out of the Regional Manager position by late Summer 2017: Ms. Garris left the Regional Manager position and Ms. Cameron-Satchell moved into the newly created Operations Assistant position. Children's Dental then hired a white man, Tim Dunne, as a Regional Manager at a salary of $105,000.[36] Regional Manager Dunne reported to Vice President Amos. Regional Manager Stiefel, a white male, continued in his position at his then-salary of $58,000.[37]

### *Alleged reports of discriminatory practices made by other employees to Ms. Cameron-Satchell from November 2014 to September 1, 2017.*

Children's Dental required Ms. Cameron-Satchell as a Regional Manager to report employee complaints of discrimination to Practice Manager Murphy.[38] Ms. Cameron-Satchell admits new management—President O'Donnell, Vice President Amos, and Human Resource Generalist Jackson—did not know of reports of discrimination she made during this time.[39] She admits she received promotions and salary increases during this time.[40]

Ms. Cameron-Satchell today contends nine employees made complaints to her as Regional Manager of discrimination, harassment, or retaliation which she in turn reported to Practice Manager Murphy.[41] President O'Donnell, Vice President Amos, and Human Resource Generalist Jackson all swore they were not aware of Ms. Cameron-Satchell's reports during her time as Regional Manager.[42]

### Ms. Cameron-Satchell begins in the Operations Assistant position on September 1, 2017 with the same salary and benefits.

Ms. Cameron-Satchell began in the newly created position of Operations Assistant on September 1, 2017. Children's Dental paid her the same salary and benefit and she reported directly to Vice President Amos.[43] Senior management became concerned very quickly about Ms. Cameron-Satchell's performance in her new position. Vice President Amos voiced concern Ms. Cameron-Satchell "overstepped her authority" by involving herself in employee salary increases.[44] Ms. Cameron-Satchell knew Vice President Amos did not like her demeanor and found her aggressive.[45] President O'Donnell felt "unimpressed" by Ms. Cameron-Satchell's performance as Operations Assistant.[46]

The new relationship soured quickly. Ms. Cameron-Satchell suspected by mid-January 2018 Children's Dental would fire her. She began looking for a new job, preparing her résumé and requesting letters of recommendation from her co-workers at Children's Dental including Regional Manager Stiefel.[47]

### Alleged reports of discriminatory practices made by other employees to Ms. Cameron-Satchell from September 2017 to January 2018.

Children's Dental required Ms. Cameron-Satchell to report discrimination in the workplace in her position as Operations Assistant.[48] Ms. Cameron-Satchell now identifies three employees

who allegedly complained to her about work conditions which she in turn reported to Children's

Dental:

1.  Lizbeth Gonzalez – October 2017: Ms. Cameron-Satchell alleges Ms. Gonzalez felt
    discriminated against because of her sexual orientation and because she is Spanish. Ms.
    Cameron-Satchell notified Vice President Amos and Human Resource Generalist Jackson
    of Ms. Gonzalez's complaint on October 31, 2017. Ms. Cameron-Satchell admits her email
    to Vice President Amos and Human Resource Generalist Jackson does not mention
    discrimination or unfair treatment based on membership in a protected class.[49]

2.  Madison Powell – January 22, 2018: Ms. Powell complained to Ms. Cameron-Satchell
    about her manager, Aubre Brown, and her Regional Manager, Donna Geer. Ms. Powell
    claimed Manager Brown "had something against her" and Regional Manager Geer
    "thought that she gave attitude." Ms. Cameron-Satchell emailed Manager Brown and
    Regional Manager Geer about Ms. Powell's complaint, copying Vice President Amos,
    Human Resource Generalist Jackson and another Regional Manager. Vice President Amos
    reprimanded Ms. Cameron-Satchell for directly communicating about an employee
    complaint with the targets of the complaint without allowing Human Resources or her
    direct supervisor to address the situation. Ms. Cameron-Satchell admits none of her
    communications about Ms. Powell's complaint mention discrimination or membership in
    a protected class on which any alleged discrimination is based.[50]

3.  Unidentified Muslim manager: Ms. Cameron-Satchell contends the selection of food at a
    catered breakfast for a managers' meeting did not offer her sufficient pescatarian options
    also affecting an unnamed Muslim manager who could not eat pork. Ms. Cameron-Satchell
    admits she cannot recall the name of the Muslim manager who allegedly complained about
    breakfast and admits she complained to the administrative assistant responsible for
    ordering the breakfast.[51]

### *Ms. Cameron-Satchell meets with Vice President Amos on January 18, 2018.*

Vice President Amos and Ms. Cameron-Satchell met on January 18, 2018 to discuss reports

by other employees of Ms. Cameron-Satchell being "dictatorial" and "harsh."[52] The next day, Ms.

Cameron-Satchell emailed Vice President Amos thanking her for her "time and frankness" and her

appreciation for "now knowing where I stand, and even more how others perceived me to be."[53]

Ms. Cameron-Satchell acknowledged the feedback she received from Vice President Amos and

pledged to "build on [her] soft skills."[54] Ms. Cameron-Satchell identified two concerns she wished

to express and clarify for Vice President Amos: (1) feeling "out of place" or "out of the group" in

her new position as Operations Assistant because she is the only one in her department on the floor; there are no other employees to share ideas, workload, or to cover in her absence; and being dismissed from Regional Managers' meetings; and (2) carrying "old baggage" from the "previous culture"—referring to the pre-acquisition environment—to explain comments from other employees she is "dictatorial" or "harsh."[55] Ms. Cameron-Satchell did not mention reports of discrimination or fear of retaliation to Vice President Amos.

### *Children's Dental's January 22, 2018 phone roll-out is poorly executed.*

Children's Dental tasked Ms. Cameron-Satchell in January 2018 to oversee the implementation of a new telephone system in its offices, including training all employees on the new telephone system by the time of its activation on January 22, 2018.[56] Ms. Cameron-Satchell does not dispute Children's Dental assigned her the responsibility for training. She assured Vice President Amos she would have employees prepared to use the new telephone system.[57]

Ms. Cameron-Satchell trained employees by forwarding office supervisors written instructions from the vendor and YouTube links of training videos.[58] Children's Dental considered this insufficient training. Ms. Cameron-Satchell disputes she delivered insufficient training.[59]

By all accounts, the roll-out of the new phone system did not go well. Children's Dental offices misdirected and dropped calls for several days because employees did not know how to use the new phone system.[60] Ms. Cameron-Satchell reported to Vice President Amos and others on January 24, 2018 office calls on the new phone system operated at a twenty-two percent service level with fifty-eight abandoned calls.[61] Manager of Patient Access Ecco Sutherlin followed up with an email on the evening of January 24, 2018 regarding the new phone system, reporting to Vice President Amos and others as of 5:00 p.m., there were 184 calls received of which 84 were abandoned.[62]

Later in the evening of January 24, 2018, Director of Marketing Kelly Raible forwarded Ms. Cameron-Satchell's and Ms. Sutherlin's emails regarding the roll-out to President O'Donnell and Vice President Amos asking, "do you know which offices Dazina [Cameron-Satchell] will be training at tomorrow? I'd just like to make sure Ecco [Sutherlin] is in the loop."[63]   President O'Donnell responded by asking if a function could be reprogrammed.[64] Director of Marketing Raible responded to President O'Donnell's inquiry and he responded "Got it" on the morning of January 25, 2018.[65]

Children's Dental then tasked Director of Marketing Raible and Manager of Patient Access Sutherlin to assume training of employees on the new system.[66] Vice President Amos assigned telephone system training to Manager Sutherlin, a Black woman.[67] Manager Sutherlin took over employee training. Service levels then increased to eighty-one percent.[68] Children's Dental attributes the need for Director Raible and Manager Sutherlin's training to Ms. Cameron-Satchell's failure to adequately train. Ms. Cameron-Satchell denies she failed to adequately train employees on the new phone system.

***Ms. Cameron-Satchell meets with Human Relations during the failure of the phone roll-out.***

Ms. Cameron-Satchell met with Human Resource Generalist Jackson on January 24, 2018 (two days after beginning the failed phone roll-out) to discuss concerns regarding her new position as Operations Assistant.[69] Both parties agree Human Resource Generalist Jackson told Ms. Cameron-Satchell (a) she (Ms. Jackson) would follow-up with Vice President Amos; and (b) Ms. Cameron-Satchell should speak directly to Vice President Amos about her concerns.

But the parties dispute whether the meeting also involved reports of retaliation. Ms. Cameron-Jackson alleges she also raised to Human Resource Generalist Jackson "a fear of being retaliated against for speaking up on behalf of other employees regarding discrimination and

harassment."[70] Ms. Cameron-Satchell swore she "referenced specific instances that had happened where I was told to kind of mind my mouth and know my place, like that wasn't my role anymore."[71] Ms. Cameron-Satchell contends she reported "concerns about the unequal treatment of employees" at her meeting with Ms. Jackson, and "noted multiple times that she provided details of discriminatory treatment among [Children's Dental] employees, whether or not she could recall the precise words used or employees discussed at that particular meeting."[72] Ms. Cameron-Satchell admits she is unable to name a specific employee or instance of discrimination she discussed with Ms. Jackson at their January 24, 2018 meeting.[73]

Children's Dental denies, although not directly, Ms. Cameron-Satchell raised concerns about retaliation. Children's Dental instead argues Ms. Cameron-Satchell "not once stated what the 'unequal treatment' was about which she purportedly complained during this meeting" and could not "name any specific employee or instance of discrimination about which she spoke to Ms. Jackson in their January 2018 meeting."[74] Regardless of the dispute over the scope of the meeting, there is no dispute Human Resource Generalist Jackson gave Ms. Cameron-Satchell a copy of Children's Dental non-retaliation policy.[75]

### *Ms. Cameron-Satchell's February 1, 2018 email to Human Resource Generalist Jackson.*

Ms. Cameron-Satchell emailed Human Resource Generalist Jackson on February 1, 2018 as a follow up to their meeting. Ms. Cameron-Satchell described their meeting as "positive and encouraging" and she "took great expectations from it."[76] But Ms. Cameron-Satchell described "increased feelings of isolation and lack of communication regarding company direction, as it directly relates to my direct role" following this meeting and complained of "stress of not having relief when I am ill, on various projects, or in general, in addition to the lack of communication and misleading directives … creating extraordinary stress, which is affecting my overall physical

and mental health."[77] Ms. Cameron-Satchell expressed her feeling "as if I am being forced to resign so the company does not have to fire me, which is overwhelming, especially when I have yet to be given any constructive criticism or disciplinary actions to warrant such" and cited "several responsibilities and tasks being removed from me with no details until after, lack of position or department details, even after requesting, misleading directives and reporting relationships, among several others" as supporting her concerns. She identified her "biggest concern" as the "recent conflict with the previous company culture, and the new one"; her opinion her transition to Operations Assistant "was misleading and posed to be a promotion, when in reality it was not"; and had she known her transition to Operations Assistant would not be a promotion, she would have remained in her position as Regional Manager.[78]

Regarding her previous manager Practice Manager Murphy, Ms. Cameron-Satchell complained "[s]ince moving under my new manager [Vice President Amos], I have been overwhelmed with my previous manager's [Practice Manager Murphy] behavior towards me, and feel that she is a great factor in the isolation."[79] She expressed uncertainty regarding "how to express [her] concerns, among a few others to my direct manager, due to the overwhelming presence of my previous manager. I feel as if false truths are being expressed of me, and actions are being taken against me concerning those details, but no one is expressing it to me directly. My job is very important to me, and I do not feel as if anyone's personal feelings towards me should directly hinder or prolong my professional success. I am asking for assistance from HR to assist with this conflict, thank you."[80]

Human Resource Generalist Jackson forwarded Ms. Cameron-Satchell's email to Vice President Amos who, in turn, forwarded it to President O'Donnell on the evening of February 1,

2021.[81] President O'Donnell responded "as discussed."[82] Ms. Cameron-Satchell admits her February 1, 2018 email does not refer to discrimination or retaliation.[83]

### Children's Dental terminates Ms. Cameron-Satchell on February 5, 2018.

On the morning of February 2, 2018, after receiving a copy of Ms. Cameron-Satchell's February 1, 2018 email, President O'Donnell told Human Resource Generalist:

> "Bridget. Julie [Vice President Amos] will speak to you about this directly but my quick perspective is [Ms. Cameron Satchell] has been incapable at performing any job we have given her since the day I got here. We continued to try to make jobs for her and she continually fails. Her demeanor in emails and to the troops is downright nasty and ignorant socially at times and she has been talked to. Julie [Vice President Amos] and I discussed last week enough is enough. Her position – whatever we made up for her this time – should be eliminated. Immediately [sic] and she should be gone. Julie [Vice President Amos] please discuss with Bridget but I would like this to happen quickly. Thanks. Mike."[84]

Vice President Amos spoke to Human Resource Generalist Jackson, as directed by President O'Donnell, about the "process and timing of [Ms. Cameron-Satchell's] termination."[85] Vice President Amos agreed with President O'Donnell's assessment of Ms. Cameron-Satchell as incapable of performing any job the company had given her and her "downright nasty and ignorant socially" demeanor.[86]

Children's Dental contends the "final straw" for its new management regarding Ms. Cameron-Satchell's performance came in January 2018 with the failed roll-out of the new phone system.[87] Ms. Cameron-Satchell disagrees the phone system roll-out constituted the "final straw," arguing she performed her duties regarding the roll-out well and other employees were involved in the roll-out.[88] She disagrees with the "final straw" despite her admissions: she understood her role to ensure she trained employees for the new phone system ahead of the January 22, 2018 "go live" date; the roll-out of the phone system went poorly; Vice President Amos reassigned phone training to Ms. Sutherlin; and under Ms. Sutherlin's direction, call statistics improved to 81 percent by January 25, 2018.[89]

Before the January 2018 phone roll-out performance issue, Vice President Amos expressed concern about Ms. Cameron-Satchell's performance. In September 2017, within weeks of assuming the Operations Assistant position, Vice President Amos felt it inappropriate for Ms. Cameron-Satchell to be involved in an employee salary increase.[90] Ms. Cameron-Satchell concedes Vice President Amos believed she "overstepped" her authority in the salary issue.[91]

Ms. Cameron-Satchell admits Vice President Amos observed an interaction between her and an office manager, Kim Tice, leaving Vice President Amos "appalled" at the unprofessional and aggressive manner.[92] She concedes Vice President Amos received complaints from two other employees—Fran Thompson and Meetu Singh—regarding her demeanor while a Regional Manager.[93]

Ms. Cameron-Satchell admits President O'Donnell, who began his work for Children's Dental in late March 2017, found her capabilities unimpressive.[94] She disagrees with his opinion. President O'Donnell swore between the time he assumed leadership of Children's Dental and Ms. Cameron-Satchell's termination, he became "aware she wasn't necessarily a fit for jobs we had her in, nor, you know, jobs we were looking for …."[95] President O'Donnell swore he learned of Ms. Cameron-Satchell's performance issues through discussions and meetings with the management team and she "didn't fit the bill. I think we tried some other jobs. I remember at the end I think we tried to the call center job [*sic*] to see if that would be a fit, you know, just trying to move the chess pieces around to best get what we needed. But that didn't work out either."[96] President O'Donnell swore he "remember[ed] personally having some involvement with her, and I was – I was severely unimpressed with her capabilities or ability to grow into" a call center position, citing her failure to "get any answers" and "how to manage … a group."[97]

Ms. Cameron-Satchell concedes she met with Vice President Amos on January 18, 2018 to discuss professionalism, specifically other employees' perception of her "dictatorial and harsh" manner.[98] There is no dispute four days later, on January 22, 2018 (the same day as the failed phone roll-out), she forwarded Madison Powell's email complaining about "uncomfortable encounters" with her co-workers not only to Vice President Amos and Human Resource Generalist Jackson but also to the subjects of Ms. Powell's complaints.[99] She admits Vice President Amos reprimanded her for "an overshare of information to an audience that, once again, they are not the decision makers who would be handling that, seeing it through" in reference to Ms. Powell's email, including talking to her about professionalism.[100] Ms. Cameron-Satchell contends this is an example of Vice President Amos reprimanding her for contacting Human Resources on behalf of other employees even though she concedes Ms. Powell's complaint did not object to discrimination based on membership in a protected class.  Ms. Cameron-Satchell concedes the failure of employee readiness for the planned "go live" date on the new phone occurred on the same day as Ms. Powell's email.

President O'Donnell does not recall the specifics of Ms. Cameron-Satchell's performance in the new phone system roll-out, does not recall hearing about problems with the telephone roll-out in January 2018, and is certain he spoke with Vice President Amos and Human Resource Generalist Jackson before deciding to terminate Ms. Cameron-Satchell.[101] President O'Donnell, as the final decisionmaker,[102] and Human Resource Generalist Jackson terminated Ms. Cameron-Satchell three days after President O'Donnell's direction "enough is enough" and Ms. Cameron-Satchell "should be gone." Vice President Amos considered Ms. Cameron-Satchell's failure to adequately train employees on the new phone system a "terminal action."[103] Human Resources Generalist Jackson identified the failed telephone system roll-out as the reason for termination.[104]

Human Resource Generalist Jackson swore Children's Dental terminated Ms. Cameron-Satchell because of her failures in implementing the new telephone system roll-out and is not aware of any other reasons but she also swore, "[Ms. Cameron-Satchell] was also not successful in the role prior to that. She was a regional manager before that. It was very evident in one meeting with her that she couldn't manage people, so she was moved to a position where she didn't have to manage people and could manage a process to which she said she had experience doing. That was also a failure. That's what ultimately led to her termination that she couldn't manage people. It was evidence that she couldn't manage the process, so that's what ultimately led to her termination."[105] Ms. Cameron-Satchell concedes Human Resource Generalist Jackson swore to these several reasons for terminating her on February 5, 2018, but she disputes the assessment she "couldn't manage people."[106]

### Ms. Cameron-Satchell files a charge of discrimination with the EEOC.

Ms. Cameron-Satchell filed a charge of discrimination five months later with the Equal Employment Opportunity Commission.[107] She alleged a continuing action of discrimination based on her race beginning September 1, 2016 through February 5, 2018. She also alleged retaliation. In the narrative prepared by her counsel, Ms. Cameron-Satchell alleged Children's Dental paid her less than similarly situated white employees during her employment. She alleged from the time of her promotion to Regional Manager in September 2016, she began to notice, and reported to her supervisor, pay disparities between white employees and employees of color. Ms. Cameron-Satchell alleged she reported her concerns about race-based unequal treatment to Human Resources and told Human Resource Generalist Jackson she feared retaliation for reporting her concerns. Ms. Cameron-Satchell claimed Children's Dental terminated her in retaliation for her continued reporting of discrimination within the company.

The EEOC issued a right-to-sue letter to Ms. Cameron-Satchell on November 12, 2020. Ms. Cameron-Satchell sued Children's Dental here on February 8, 2021. She alleges discrimination on the basis of race and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*,[108] 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 955(a), (d).[109]

## II.    Analysis

Children's Dental moves for summary judgment arguing Ms. Cameron-Satchell: (1) failed to establish a prima facie case of discrimination; (2) failed to establish a prima facie case of retaliation; and (3) even if she established a prima facie case of race discrimination or retaliation, the undisputed record shows Children's Dental had a legitimate, non-discriminatory reason to terminate her employment.[110]

Ms. Cameron-Satchell responds (1) she established a prima facie case of discrimination; (2) she established a prima facie case of retaliation; and (3) there are genuine issues of fact showing a pretextual termination requiring the case to be decided by the jury.

### A.    Ms. Cameron-Satchell fails to adduce evidence of a prima facie case of race discrimination.

The parties agree the three-step framework of *McDonnell Douglas Corp. v. Green*[111] applies to our analysis of the Title VII, section 1981, and PHRA claims.[112] The first step of the *McDonnell Douglas* framework requires Ms. Cameron-Satchell establish a prima facie case of discrimination. If she does so, the burden shifts to Children's Dental to articulate a legitimate, non-discriminatory reason for its challenged conduct. If Children's Dental proffers a reason, the burden shifts to Ms. Cameron-Satchell to demonstrate the reason for her termination is pretext for discrimination.[113]

To establish a prima facie case of race-based discrimination on a disparate treatment theory, Ms. Cameron-Satchell must show: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.[114]

Children's Dental concedes Ms. Cameron-Satchell is a member of a protected class and termination constitutes an adverse action. Children's Dental challenges the second and fourth elements of the prima facie case arguing Ms. Cameron-Satchell is not qualified for the Operations Assistant position or the Regional Manager position and her termination does not give rise to an inference of discrimination.

### 1. There is no evidence Ms. Cameron-Satchell did not qualify for the Operations Assistant position.

Aside from a passing comment in a footnote, Children's Dental failed to develop its challenge to Ms. Cameron-Satchell's qualifications for the Operations Assistant position she held at the time of her termination or the Regional Manager position she held before transferring to the Operations Assistant position. As the movant, Children's Dental has the burden of showing no genuine issue as to Ms. Cameron-Satchell's qualifications. It failed to do so and, drawing all reasonable inferences in favor of Ms. Cameron-Satchell on the issue of her qualifications, we find she satisfies the second prong of the prima facie case of race-based discrimination.[115]

### 2. Ms. Cameron-Satchell does not adduce evidence allowing us to infer the termination occurred under circumstances giving rise to an inference of unlawful discrimination.

There is no dispute Ms. Cameron-Satchell's termination is an adverse employment action.[116] The issue presented is whether her termination occurred under circumstances giving rise to an inference of race-based discrimination. We find no evidence meeting this standard.

To proceed to trial by adducing evidence of these circumstances, Ms. Cameron-Satchell may either: (1) introduce evidence of similarly situated employees—comparators—who are (a) not members of the same protected class and (b) treated more favorably under similar circumstances; or (2) rely on circumstantial evidence otherwise showing a causal nexus between her membership in a protected class and her termination.[117] Her subjective belief race played a role in her termination is insufficient to establish an inference of discrimination.[118]

Ms. Cameron-Satchell fails to cite evidence of either a comparator treated more favorably or a causal nexus between her race and her termination. In response to summary judgment, Ms. Cameron-Satchell cites Children's Dental hiring of Tim Dunne, a white man, to the position of Regional Manager after she moved to the Operations Assistant position. There is no dispute Children's Dental paid Mr. Dunne a higher salary than Ms. Cameron-Satchell. But there is no dispute Children's Dental hired Mr. Dunne after it revised the job description for the Regional Manager position and, while Ms. Cameron-Satchell held the Regional Manager position before the revision, the two other Regional Managers—Ms. Garris, a while female, and Mr. Stiefel, a white male—earned a lower salary than she earned.

At oral argument, Ms. Cameron-Satchell continued to argue Mr. Dunne is the proper comparator. We disagree. Mr. Dunne is not a comparator because he is not similarly situated. Mr. Dunne must be "similarly situated in all respects" to Ms. Cameron-Satchell; he must have "dealt with the same supervisor, … subject[ed] to the same standards[,] and … engaged in the same conduct."[119] Mr. Dunne and Ms. Cameron-Satchell are not directly comparable in all material respects. Ms. Cameron-Satchell concedes: Children's Dental terminated her from the Operations Assistant position, not the Regional Manager position; Children's Dental revised the job description for Regional Manager in May 2017; the revised position required minimum

18

qualifications which neither she nor Ms. Garris, a white woman who earned less than her, met; and Children's Dental created the Operations Assistant position for her. Children's Dental terminated her for performance issues surrounding the new phone system roll-out. She does not identify similar performance issues by Mr. Dunne for which Children's Dental did not terminate. Mr. Dunne is not a valid comparator.[120] Ms. Cameron-Satchell offers no other comparator evidence.

Ms. Cameron-Satchell also fails to cite evidence of a causal nexus between her race and her termination. She suggests Children's Dental transferred her from the Regional Manager position to the Operations Assistant position to "continue to push [her] out of her position partly so that she would no longer be supervising employees" and in an effort to "further marginalize her and punish [her] for her continued advocacy for her coworkers experiencing discrimination."[121] She suggests Children's Dental terminated her because of her "ongoing advocacy for her fellow employees" and after "going to human resources and advocating for employees …." She argues around the time of her termination, Children's Dental "began to push back against [her] for her actions," including receiving a reprimand for "oversharing" information and overstepping her boundaries. At oral argument, Ms. Cameron-Satchell's counsel argued she made regular complaints on behalf of other employees to her white supervisors evidencing a causal nexus between her termination and race. But this argument goes to her retaliation claim, not her disparate treatment claim. There is nothing in the record on which we could infer a race-based discriminatory termination.

Ms. Cameron-Satchell failed to meet her burden to establish the circumstances meeting the fourth prong of the prima facie case of race-based discrimination.

### B.     Ms. Cameron-Satchell fails to establish a prima facie case of retaliation.

The *McDonnell Douglas* burden-shifting framework also applies to the retaliation claim.[122] Ms. Cameron-Satchell must first establish a prima facie case of retaliation. If she does so, the burden shifts to Children's Dental to articulate a legitimate, non-retaliatory reason for its action. If it does so, the burden shifts back to Ms. Cameron-Satchell to show retaliation is the real reason for her termination.[123]

To establish a prima facie claim of retaliation sufficient to survive summary judgment, Ms. Cameron-Satchell must cite evidence: (1) she engaged in protected activity; (2) Children's Dental took an adverse employment action against her; and (3) a causal connection between her protected activity and the adverse employment action.[124] Children's Dental argues Ms. Cameron-Satchell fails to establish a prima facie claim of retaliation because she fails to meet the first and third elements: she does not adduce evidence of a protected activity and even if she engaged in protected activity, she cannot show a causal connection between this activity and her termination. "[T]he anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')."[125]

To satisfy the protected activity element of the prima facia case, Ms. Cameron-Satchell "must hold an objectively reasonable belief, in good faith, that the activity [she] oppose[d] is unlawful under Title VII."[126] General complaints of unfair treatment are insufficient to establish protected activity but "informal protests of discriminatory employment practices, including making complaints to management … and expressing support for co-workers who have filed formal charges" of discrimination is protected activity.[127] Where an employee's job duty involves reporting suspected discrimination to the company, it is not protected activity.[128] The employee

must "step outside the role" or "make clear to the employer that the employee was taking a position adverse to the employer"; otherwise, "nearly every activity in the normal course of a manager's job would potentially be protected activity …."[129]

To satisfy the causation element of the prima facie case, Ms. Cameron-Satchell must show a causal connection between her protected activity and her termination. She may do so in two ways. First, "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment."[130] Second, "[w]here the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference" of a causal link.[131] The kind of evidence to show causation includes "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."[132] Although there is no "bright line" test of temporal proximity, our Court of Appeals generally considers days, not months, usually suggestive.[133] Ms. Cameron-Satchell cannot establish a causal connection without evidence the decision-maker knew of her protected activity at the time of termination.[134]

Children's Dental divides Ms. Cameron-Satchell's alleged protected activity into three categories: (1) reports by nine employees of discriminatory practices made by other employees to Ms. Cameron-Satchell as Regional Manager from November 2014 to September 2017; (2) reports by three employees of discriminatory practices made to Ms. Cameron-Satchell as Operations Assistant from September 2017 to January 2018; and (3) Ms. Cameron-Satchell's own complaints of discrimination to Human Resources in January–February 2018. Ms. Cameron-Satchell does not

dispute Children's Health defined categories of alleged protected activity. At oral argument, her counsel argued the time categories bleed into each other.

 1. **Ms. Cameron-Satchell fails to adduce a prima facie case of retaliation based on alleged protected activity from November 2014 to September 1, 2017.**

We first examine the period from Ms. Cameron-Satchell's appointment to the Regional Manager position in November 2014 to September 1, 2017, when she left the position. There is no dispute Ms. Cameron-Satchell had an affirmative duty to report discrimination in the workplace in her position as Regional Manager to Practice Manager Murphy. There is no dispute Practice Manager Murphy handled human resources issues during this time because Children's Dental did not have a formal Human Resources department.

Children's Dental argues Ms. Cameron-Satchell's alleged protected activity has nothing to do with discrimination; she only became aware of complaints by other employees or reported them to management or Human Relations because, as a manager, she had a reporting obligation; and she never opposed discrimination or participated in an investigation. Ms. Cameron-Satchell disagrees, arguing she regularly advocated for other employees who experienced discrimination from 2014 to September 2017 constituting protected activity. She cites *Littlejohn v. City of New York*, a decision from the United States Court of Appeals for the Second Circuit, to support her argument she engaged in protected activity even though as a manager she had an obligation to report complaints of discrimination made by employees she supervised.[135] In *Littlejohn*, the court distinguished between "merely reporting or investigating other employees' complaints of discrimination, which simply fulfills a personnel manager's daily duties, and communicating to the employer the manager's own 'belief that the employer has engaged in … a form of employment discrimination,' which 'virtually always constitutes' opposition notwithstanding the employee's

underlying job responsibilities."[136] The court held "[t]o the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under [Title VII's] opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII. But if an employee—even one whose job responsibilities involve investigating complaints of discrimination—actively 'support[s]' other employees in asserting their Title VII rights or personally 'complain[s]' or is 'critical' about the 'discriminatory employment practices' of her employer, that employee has engaged in a protected activity under § 704(a)'s opposition clause."[137]

Ms. Cameron-Satchell argues she did more than simply report other employees' complaints of discrimination while she held the Regional Manager position. She claims she "made multiple reports throughout her employment reflecting her concerns" regarding treatment of other employees. She argues she had a history of complaining to Ms. Murphy—who is not a decisionmaker in her termination—and Vice President Amos criticized her for "overstepping." But Vice President Amos swore she did not speak with Ms. Murphy about Ms. Cameron-Satchell's "history of making complaints on behalf of other employees."[138] And the "overstepping" observation pertained to Vice President Amos's reaction to Ms. Cameron-Satchell involving herself in an employee's pay rate when she had no authority to do so.[139]

But even if Ms. Cameron-Satchell's advocacy during this period constitutes protected activity, there is no causal nexus to her February 2018 termination. In the first period, the latest evidence of alleged protected activity occurred in early 2017.[140] This is a year before Ms. Cameron-Satchell's termination and is not unusually suggestive of causation. At oral argument, Ms. Cameron-Satchell's counsel conceded temporal proximity during the Regional Manager

period does not establish causation. But he argued her reporting more appropriately flows into the second period of activity, from September 1, 2011 to January 2018 when she held the Operations Assistant position. We are not persuaded. Where there is no unusually suggestive temporal proximity, Ms. Cameron-Satchell must adduce some evidence to raise an inference of a causal link. She failed to adduce such evidence. During this time, Children's Dental promoted her and gave her salary increases. There is no causal nexus to her February 2018 termination.

2.    **Ms. Cameron-Satchell fails to adduce a prima facie case of retaliation based on protected activity from September 1, 2017 to January 2018.**

We next examine Ms. Cameron-Satchell's alleged protected activity in reporting complaints she received from three employees in the five months she held the Operations Assistant position from September 2017 to February 2018. Ms. Cameron-Satchell did not supervise employees while in the Operations Assistant position and therefore did not have a responsibility to forward employee complaints of discrimination.

Children's Dental argues Ms. Cameron-Satchell simply passed along employee Lizbeth Gonzalez's complaint on October 31, 2017; employee Madison Powell's complaint on January 22, 2018 which did not raise discrimination based on a protected characteristic; and she never reported the third employee's complaint about the food selection at a breakfast meeting.[141]

Ms. Cameron-Satchell disagrees. She argues she continued to advocate for employees who felt discrimination and Children's Dental began to "push back" on her for her continued advocacy, including Vice President Amos reprimanding her for "oversharing" by directly communicating with the subjects of Ms. Powell's complaint without allowing Human Resources or Vice President Amos to first address it.

The October 31, 2017 complaint made by Lizbeth Gonzalez occurred three months before Ms. Cameron-Satchell's termination and is not, under the law of this Circuit, so temporally

proximate as to be unusually suggestive. Ms. Cameron-Satchell contends a period of four months "may" be suggestive of unduly suggestive temporal proximity citing our Court of Appeals's decision in *Kachmar v. SunGard Data Systems, Inc.*[142] *Kachmar* is not persuasive. There, our Court of Appeals reversed the district court's dismissal of a retaliation claim: "The district court here analyzed the circumstantial evidence–the gap in time between [Plaintiff's] protected activities and her termination–and determined it lacked the requisite proximity. It then proceeded to assess whether there was a pattern of antagonism that could allow a fact-finder to infer retaliatory animus. It found no such pattern. In dismissing on the ground that the facts pled in [Plaintiff's] complaint, even if proven, would be insufficient to show the required causal link, the district court took too narrow a view of the temporal proximity needed to satisfy the causal link element at this early stage of the case. It failed to accept the facts alleged in the complaint as true and construe those facts in the light most favorable to the plaintiff."[143] Defendant argued a four-month gap would be too long to allow an inference of causation. Our Court of Appeals rejected this argument, explaining the prima facie case focuses on causation, not temporal proximity itself.[144]  The court summarily concluded "there was too great a gap" between the plaintiff's protected conduct and termination, the district court failed to give plaintiff the opportunity "to delve further into the facts by discovery."[145]

Since *Kachmar*, our Court of Appeals has found a gap of three months and five months between protected activity and adverse action do not, without more evidence, support an inference of causation.[146] We are directed by our Court of Appeals to consider a "broad array of evidence," including unusually suggestive temporal proximity, to determine whether there is a causal connection between protected activity and an adverse action.[147] But an inference of unusually suggestive temporal proximity "begins to dissipate where there is a gap of three months or more

between the protected activity and the adverse action."[148] Ms. Cameron-Satchell's reliance on *Kachmar* is unpersuasive.

The January 22, 2018 complaint made by Madison Powell occurred fourteen days before termination. January 22, 2018 is also the "go live" date of the new phone system Ms. Cameron-Satchell concedes did not go well. Ms. Cameron-Satchell forwarded Ms. Powell's email to Vice President Amos and others, swearing she felt she had a duty to do so as Operations Assistant even though she no longer had direct supervisory reports.[149] There is no evidence Ms. Powell's complaint to Ms. Cameron-Satchell involved discrimination based on a protected characteristic. Ms. Cameron-Satchell conceded she forwarded Ms. Powell's complaint to Vice President Amos and Human Resource Generalist Jackson consistent with what she believed to be her obligation, not "outside her role" as Operations Assistant.[150] At oral argument, her counsel conceded she did not raise race or any protected claim in the emails conveying Ms. Gonzalez's and Ms. Powell's complaint. There is no evidence Vice President Amos reprimanded Ms. Cameron-Satchell for forwarding Ms. Powell's email to her (Vice President Amos) and Human Resource Generalist Jackson. In fact, Vice President Amos asked Ms. Cameron-Satchell to explain why she felt it appropriate to forward the email to anyone ***other than*** Vice President Amos and Human Resource Generalist Jackson. Ms. Cameron-Satchell did not receive a reprimand for forwarding the email; she received a reprimand for forwarding it to the employees about which Ms. Powell complained. There is no causal connection between the alleged protected activity in forwarding Ms. Powell's email and her termination.

### 3.    Ms. Cameron-Satchell fails to adduce a prima facie case of retaliation based on protected activity in January and February 2018.

We lastly examine the alleged protected activity of Ms. Cameron-Satchell in mid-to-late January 2018 and her termination twelve days later on February 5, 2018. We find evidence of two

meetings Ms. Cameron-Satchell had with Children's Dental management: a January 18, 2018 meeting with Vice President Amos and a January 24, 2018 meeting with Human Resource Generalist Jackson.

Vice President Amos and Ms. Cameron-Satchell met on January 18, 2018 to discuss reports by other employees of Ms. Cameron-Satchell being "dictatorial" and "harsh."[151] Ms. Cameron-Satchell does ***not*** identify this meeting as one where she expressed fear of retaliation or discrimination. The record shows she did not. The day after her meeting, Ms. Cameron-Satchell emailed Vice President Amos thanking her for her "time and frankness" and her appreciation for "now knowing where I stand, and even more how others perceived me to be."[152] Ms. Cameron-Satchell acknowledged the feedback she received from Vice President Amos and pledged to "build on [her] soft skills."[153] Ms. Cameron-Satchell identified two concerns she wished to express and clarify for Vice President Amos: (1) feeling "out of place" or "out of the group" in her new position as Operations Assistant because she is the only one in her department on the floor, there are no other employees to share ideas, workload, or to cover in her absence, and being dismissed from Regional Managers' meetings; and (2) carrying "old baggage" from the "previous culture"— referring to the pre-acquisition environment—to explain comments from other employees she is "dictatorial" or "harsh."[154] Ms. Cameron-Satchell did not mention reports of discrimination or fear of retaliation to Vice President Amos.

Six days later, Ms. Cameron-Satchell met with Human Resource Generalist Jackson on January 24, 2018. They met two days after Ms. Cameron-Satchell performed poorly in training and implementing the phone roll-out. Ms. Cameron-Satchell identifies this meeting as protected activity. Children's Dental contends this meeting related only to Ms. Cameron-Satchell's questions around the role and function of her position as Operations Assistant. Ms. Cameron-Satchell swears

she also reported concerns about retaliation. Human Resource Generalist Jackson swore Ms. Cameron-Satchell did not raise a retaliation concern. Children's Dental provided Ms. Cameron-Satchell its non-retaliation policy at the meeting with Human Resource Generalist Jackson.

We assume, for purposes of her argument, Ms. Cameron-Satchell raised a concern about retaliation on January 24, 2018. We still must examine whether it is protected activity. Ms. Cameron-Satchell described her meeting with Human Resource Generalist Jackson:

> January 2018, I sat down with HR, Bridget Jackson, and I let her know that things were getting overwhelming with me and that I felt like I was being retaliated against for speaking up for different employees. And I referenced specific instances that happened where I was told to kind of mind my mouth and know my place, like that wasn't my role anymore. And I gave her all this because she told me that, you know, it was between her and HR it and wouldn't get out. That was January of 2018.[155]

Ms. Cameron-Satchell swears she "specifically informed [Human Resource Generalist Jackson] that I feared retaliation for my ongoing reports of discrimination on behalf of other employees."[156] Ms. Cameron-Satchell now concedes she could not name an employee or instance of discrimination she contends she raised with Human Resource Generalist Jackson at their January 24, 2018 meeting.

The only evidence in the record of Ms. Cameron-Satchell "speaking up for different employees" are the complaints she reported as Regional Manager between November 2014 and September 1, 2017 and complaints she reported as Operations Assistant between September 1, 2017 and January 22, 2018. Ms. Cameron-Satchell's argument is Children's Dental terminated her in retaliation for her reporting (1) employee complaints as Regional Manager—a position she concedes included an affirmative duty to report employee complaints—the last of which occurred in January 2017, a full year before her termination; and (2) employee complaints as Operations Manager which occurred in October 2017 (Lizbeth Gonzalez) and January 22, 2018 (Madison Powell). She claims she raised both categories in her January 24, 2018 meeting with Human

Resource Generalist Jackson. But Children's Dental did not retaliate against her or take an adverse action against her in the November 2014 to September 1, 2017 time period. During that period, it promoted her and gave her salary increases.

Ms. Cameron-Satchell swore she referenced "specific instances ... where I was told to kind of mind my mouth and know my place, like that wasn't my role anymore." There is no evidence of such instances. Counsel during oral argument could not identify who made these statements or when. We may infer Ms. Cameron-Satchell refers to the January 22, 2018 incident where Madison Powell complained about her co-worker and supervisor who "had something against her" and "thought that she gave attitude." Vice President Amos reprimanded Ms. Cameron-Satchell for emailing Ms. Powell's complaint to the two subjects of her complaint without first allowing Human Resources to address the complaint. Ms. Cameron-Satchell admits none of her communications about Ms. Powell's complaint mention discrimination or membership in a protected class on which any alleged discrimination is based. And Vice President Amos's reprimand of Ms. Cameron-Satchell for forwarding of Ms. Powell's complaint to the employees about whom she complained is not protected activity. Vice President Amos did not reprimand her for forwarding Ms. Powell's complaint; Ms. Cameron-Satchell received a reprimand for forwarding Ms. Powell's complaint to the employees about which Ms. Powell complained. Ms. Cameron-Satchell did not oppose discrimination made unlawful by Title VII and does not have protected activity.

Even if we considered her undefined complaints of a fear of retaliation made to Human Resources Jackson on January 24, 2018 protected activity, Ms. Cameron-Satchell failed to produce evidence at the prima facie stage sufficient to raise an inference her protected activity is the "likely reason" for her termination.[157] Ms. Cameron-Satchell contends her "ongoing" reports to

management of "employee concerns" coupled with her termination days after her February 1, 2018 email to Human Resource Generalist Jackson and Children's Dental "general culture of discrimination" showing an "atmosphere of ongoing antagonism in their workplace relating to reports of discrimination" is sufficient to meet the causation prong of the prima facie case.[158]

We are not persuaded. There is no dispute Ms. Cameron-Satchell's February 1, 2018 email does not mention discrimination or retaliation. The email instead complains about the parameters of her job position; identifies her "biggest concern" as "the recent conflict with the previous company culture and the new one"; and complains her former manager Brook Murphy portrayed the Operations Assistant position as a promotion when it is not.[159] Her February 1, 2018 email complains about "how I have been being treated [*sic*]" but does not attribute this challenged treatment with activity made unlawful by Title VII. It also arises within days of widespread criticism of her performance in implementing the phone system roll-out and while she is admittedly seeking a new job.

Ms. Cameron-Satchell refers to a "general culture of discrimination" at Children's Dental, citing charges of discrimination filed with the EEOC by eight other employees. These employees claimed discrimination on the basis of sexual orientation, race, religion, national origin, pregnancy, and a violation of the Family Medical Leave Act.[160] She argues these complaints evidence an ongoing culture of discrimination and antagonism evidencing a causal connection between her reports of employee complaints to her termination. This argument is misplaced. The kind of evidence Ms. Cameron-Satchell must adduce to show a causation connection for a retaliation claim at the prima facie stage includes "***intervening*** antagonism or retaliatory animus"[161]—that is, antagonism between the protected activity and the adverse action. Charges filed by eight other employees alleging discriminatory conduct does not show antagonism by Children's Dental

between the January 24, 2018 meeting with Human Resource Generalist Jackson and her termination on February 5, 2018.

Ms. Cameron-Satchell failed to meet her burden at the prima facie stage to show evidence sufficient to raise an inference her protected activity is the likely reason for her termination. But even if she did satisfy her prima facie burden, she cannot show at the pretext stage a retaliatory animus is the but-for cause of her termination.

### C. Even if Ms. Cameron-Satchell established a prima facie case of discrimination or retaliation, she fails to adduce evidence of pretext.

Even if Ms. Cameron-Satchell established a prima facie case of discrimination or retaliation under the *McDonnell Douglas* framework, she cannot show (1) Children's Dental's non-discriminatory reason for her termination is pretext, or (2) show retaliation is the real reason for her termination. Children's Dental's sworn testimony and contemporaneous emails confirms it terminated Ms. Cameron-Satchell for performance and management issues culminating with the failure to properly train employees on the new telephone system. Ms. Cameron-Satchell offers no evidence to dispute this fact.

To show pretext sufficient to survive summary judgment, Ms. Cameron-Satchell "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Children's Dental] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Children's Dental's] action."[162] On the first *Fuentes* prong, evidence must show "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons."[163] On the second *Fuentes* prong, "the plaintiff must point to evidence

with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [protected class] was a motivating or determinative factor in the employment decision."[164]

In a retaliation case, a plaintiff "has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination under Title VII."[165] This higher burden puts "the ultimate burden" on the plaintiff to "prove that retaliatory animus was the 'but-for' cause of the adverse employment action."[166]

Ms. Cameron-Satchell argues the reason for her termination is a pretext for race-based discrimination and in retaliation for her complaints of discrimination because: (1) the record shows differing, inconsistent, and contradictory reasons for her termination; (2) Children's Dental hired another person for the Operations Assistant position it claims it eliminated on her termination; (3) there are no documented discipline or performance concerns during her employment.

Ms. Cameron-Satchell concedes Children's Health charged her with the responsibility for properly training all employees on the new phone system before its "go live" date of January 22, 2018. She concedes the poor roll-out of the phone system as the undisputed evidence confirms misdirected and dropped calls for several days because employees did not receive proper training.

But then Ms. Cameron-Satchell still argues we should ignore (or discount) the admitted failures in the phone system roll-out because of alleged differing, inconsistent, and contradictory reasons for her termination. She contends she was not the only employee tasked with training employees in preparation for the new phone system.[167] She contends Children's Dental designated another employee, Ecco Sutherlin, to be the lead in the phone system rollout. She offers no evidentiary support for this conclusion. The evidence is to the contrary.  For example, in a January 17, 2018 email, Ms. Cameron-Satchell assured Kelly Raible, Director of Marketing, Vice President Amos, and Ms. Sutherlin, she "will take the lead for now and ensure we are all aware of the process

collectively. I am looking forward to the training as well …."[168] She also swore she "was supposed to train the supervisors" who in turn "were supposed to train their staff."[169] Vice President Amos swore Children's Dental expected Ms. Cameron-Satchell to learn how the new phone system worked and train its employees on the system.[170] To the extent Ms. Cameron-Satchell suggests Ms. Sutherlin is to blame for the failure of employees to be trained on the new phone system and Children's Dental did not terminate her, it does not support her race-based discrimination claim because Ms. Sutherlin is also a Black woman.

Ms. Cameron-Satchell argues regardless of whether Children's Dental tasked her or Ms. Sutherlin to roll out the new phone system, it still offered inconsistent reasons for terminating her. She concedes Human Resource Generalist Jackson swore performance on the new phone system is the reason for termination but argues no one raised the phone issue during the termination meeting on February 5, 2018; President O'Donnell's February 2, 2018 email directing Human Resource Generalist Jackson to terminate her did not specifically reference the phone system; President O'Donnell could not remember at his deposition whether the phone system performance caused the termination; there is no written discipline or documentation regarding her performance; and although Children's Dental contends it eliminated her position as Operations Assistant, it hired another person for the job. But the undisputed record confirms Children's Dental emailed President O'Donnell about the failed telephone roll-out on January 24, 2018 and he responded, "got it."

Ms. Cameron-Satchell does not satisfy our Court of Appeals' tests in *Fuentes*. Ms. Cameron-Satchell must meet the burden of showing a genuine issue of material fact as to whether Children's Dental's proffered reasons for termination are pretext for unlawful goals. She may meet this burden by either showing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the

employer's actions could not have been for nondiscriminatory reasons" or "point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [protected class] was a motivating or determinative factor in the employment decision."[171] And, for retaliation, Ms. Cameron-Satchell must show Children's Dental would not have terminated her "but-for" her protected activity.

Ms. Cameron-Satchell adduces no evidence meeting our Court of Appeals's standard. Children's Dental promoted her and gave her raises for several years before terminating her shortly after the failed roll-out of the telephone system under her control. Children's Dental did not hire "another person for the job" of Operations Assistant; it hired someone to run its call center.[172] Ms. Cameron-Satchell simply concludes, with no evidence, the Operations Assistant is the same as a person "hired … to run the call center." Ms. Cameron-Satchell admits Children's Dental created the Operations Assistant position for her because of her legacy knowledge of the business including the Dentrix practice management software. She does not explain how an employee hired to run the call center is the same position as the one she held. Ms. Sutherlin, the other employee on whom Ms. Cameron-Satchell puts the blame for the failed phone system roll-out, is Black and Children's Dental did not terminate her. Ms. Cameron-Satchell concedes Children's Dental made her responsible for training employees on the new phone system and the implementation of the phone system went poorly. There is no evidence to support a pretextual termination because of race-based discrimination.

There is no evidence to show Children's Dental's reason for her termination is false and the real reason or "but-for" reason for her termination is retaliation.[173] Ms. Cameron-Satchell concedes the phone system training and roll-out failed and it was her responsibility, at least in part, to ensure a successful roll-out of the new phone system. She failed to adduce evidence from which

a reasonable factfinder could find Children's Dental's proffered reason for her termination is pretext. She cites only her January 24, 2018 meeting with Human Resource Generalist Jackson where she claims she expressed fear of retaliation for her past advocacy of employees' complaints. Ms. Cameron-Satchell cannot recall the specifics of her conversation regarding retaliation with Human Resource Generalist Jackson. Her follow-up email to Human Resource Generalist Jackson focuses on frustration with her former manager Ms. Murphy, not discriminatory or retaliatory treatment. President O'Donnell, seemingly frustrated with Ms. Cameron-Satchell after reading her February 1, 2018 email and aware of the telephone roll-out failure, decided to terminate her. In this Circuit, "an employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason."[174] Ms. Cameron-Satchell fails to meet her burden of pretext either on her claim of race-based discrimination or retaliation.

## III.    Conclusion

Dazina Cameron-Satchell sued her former employer alleging it terminated her based on her race and asserts claims for discrimination and retaliatory discharge in violation of Title VII, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act. She failed to meet her burden of showing a prima facie case. Even if we could liberally find non-material questions of fact on the prima facie case, she offers no evidentiary basis to find her employer terminated her as a pretext for either race discrimination or retaliation for engaging in protected conduct. There are no genuine issues of material fact warranting trial. We enter judgment in favor of Children's Dental as a matter of law.

---

[1] Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Children's Dental filed its Motion and brief in support of summary judgment at ECF Doc. No. 16, 16-1; SUMF at ECF Doc. No. 16-2; and Appendix at ECF Doc. No. 16-3. Ms. Cameron-Satchell filed a response brief at ECF Doc. No. 19-1, responded to Children's Dental at SUMF at ECF Doc.

No. 19-2. Children's Dental filed its reply brief and response to Ms. Cameron-Satchell's additional statement of facts at ECF Doc. No. 22 and 22-1.

[2] ECF Doc. No. 16-2, SUMF ¶ 4.

[3] *Id.* SUMF ¶ 6.

[4] *Id.* SUMF ¶ 7.

[5] *Id.* SUMF ¶¶ 8, 10.

[6] *Id.* SUMF ¶¶ 11-15.

[7] *Id.* SUMF ¶ 17.

[8] At the time of Mr. Stiefel's promotion in January 2017, Ms. Cameron-Satchell earned an annual salary of $65,000; Ms. Garris earned an annual salary of $63,481; and Mr. Stiefel earned an annual salary of $57,990. *Id.* SUMF ¶¶ 18-20.

[9] *Id.* SUMF ¶¶ 24-26.

[10] ECF Doc. 16-3, Appendix 507.

[11] ECF Doc. No. 16-2, SUMF ¶¶ 41-44.

[12] *Id.* SUMF ¶ 45. Children's Dental characterizes the move from the Regional Manager position to an operations position as a lateral move. Ms. Cameron-Satchel disputes this is a lateral move as she understood the move to be a promotion. ECF Doc. No. 19-2, Response to SUMF ¶ 45.

[13] ECF Doc. No. 16-2, SUMF ¶ 46.

[14] *Id.* SUMF ¶ 47.

[15] *Id.* SUMF ¶¶ 36-37.

[16] *Id.* SUMF ¶ 32. Children's Dental promoted Ms. Amos to Vice President of Dental Operations in August 2017. *Id.* ¶ 35.

[17] *Id.* SUMF ¶¶ 27, 29, 30-31.

[18] *Id.* SUMF ¶ 38.

[19] *Id.* SUMF ¶ 51.

[20] *Id.* SUMF ¶¶ 53-54.

[21] *Id.* SUMF ¶ 55.

[22] *Id.* SUMF ¶ 48.

[23] *Id.* SUMF ¶ 49.

[24] *Id.* SUMF ¶¶ 59-60, 65.

[25] *Id.* SUMF ¶ 61.

[26] *Id.* SUMF ¶¶ 65-67. Children's Dental does not explain how Practice Manager Murphy demoted Ms. Garris in August 2017 when, by that time, Vice President Amos supervised the Regional Managers.

[27] *Id.* SUMF ¶¶ 68-69.

[28] *Id.* SUMF ¶ 70.

[29] *Id.* SUMF ¶ 71.

[30] *Id.* SUMF ¶ 72.

[31] *Id.* SUMF ¶ 73.

[32] *Id.* SUMF ¶ 74.

[33] *Id.* SUMF ¶¶ 75-77.

[34] *Id.* SUMF ¶ 78; ECF Doc. No. 16-3, Deposition of J. Amos at 51-53, Appendix 152-53.

[35] ECF Doc. No. 16-2, SUMF ¶ 78.

[36] *Id.* SUMF ¶¶ 79-81, 86-87.

[37] *Id.* SUMF ¶ 88.

[38] *Id.* SUMF ¶ 192.

[39] *Id.* SUMF ¶ 191.

[40] *Id.* SUMF ¶ 193.

[41] *Id.* SUMF ¶ 194.

---

[42] *Id.* SUMF ¶ 191. Ms. Cameron-Satchell's counsel's oral argument suggested either Ms. Amos or Mr. O'Donnell testified they had general knowledge of her earlier complaints. He did not offer a cite in his briefs or during oral argument. We found no such testimony.

[43] *Id.* SUMF ¶¶ 89-91.

[44] *Id.* SUMF ¶ 93; ECF Doc. No. 16-3, Appendix 455-56. Ms. Cameron-Satchell does not dispute Vice President Amos's concern. ECF Doc. No. 19-2, Response to SUMF ¶ 93.

[45] ECF Doc. No. 16-2, SUMF ¶ 96.

[46] *Id.* SUMF ¶ 94. Ms. Cameron-Satchell does not dispute President O'Donnell became "unimpressed" with her performance. ECF Doc. No. 19-2, Response to SUMF ¶ 94.

[47] ECF Doc. No. 16-2, SUMF ¶¶ 95-98.

[48] *Id.* SUMF ¶ 145.

[49] *Id.* SUMF ¶¶ 148-57.

[50] *Id.* SUMF ¶¶ 158-71; ECF Doc. No. 16-3, Appendix 476-81.

[51] ECF Doc. No. 16-2, SUMF ¶¶ 172-75.

[52] *Id.* SUMF ¶¶ 99-101.

[53] ECF Doc. No. 16-3, Appendix 473-74.

[54] *Id.*

[55] *Id.*

[56] *Id.* SUMF ¶¶ 102-105.

[57] *Id.* SUMF ¶ 106.

[58] *Id.* SUMF ¶ 107.

[59] *Id.* SUMF ¶ 107; ECF Doc. No. 19-2, Response to SUMF ¶ 107.

[60] ECF Doc. No. 16-2, SUMF ¶¶ 107-108.

[61] *Id.* SUMF ¶ 109; ECF Doc. No. 16-3, Appendix 497.

[62] ECF Doc. No. 16-3, Appendix 496.

---

[63] *Id.* Appendix 495.

[64] *Id.*

[65] *Id.*

[66] ECF Doc. No. 16-2, SUMF ¶ 110.

[67] *Id.* SUMF ¶¶ 114, 120.

[68] *Id.* SUMF ¶ 116.

[69] ECF Doc. No. 16-2, SUMF ¶ 176; ECF Doc. No. 19-2, Cameron-Satchell SUMF ¶ 308. It is unclear whether Ms. Cameron-Satchell met with Human Resource Generalist Jackson once or twice in January. It is undisputed she met with Vice President Amos on January 18, 2018 and Human Resource Generalist Jackson on January 24, 2018. But Ms. Cameron-Satchell swears she met with Ms. Jackson on two separate occasions in January 2018. *See* ECF Doc. No. 19-3, Declaration ¶ 19. At oral argument on summary judgment, Ms. Cameron-Satchell's counsel then identified only one meeting—the January 24, 2018 meeting—with Human Resource Generalist Jackson.

[70] ECF Doc. No. 19-2, Response to SUMF ¶¶ 177-78; ECF Doc. No. 16-3, Deposition of D. Cameron-Satchell at 253, Appendix 65; ECF 19-3, Cameron-Satchell Declaration ¶19.

[71] ECF Doc. No. 16-3, Deposition of D. Cameron-Satchell at 253, Appendix 65.

[72] ECF Doc. No. 19-2, Response to SUMF ¶ 181.

[73] ECF Doc. No. 16-2, SUMF ¶ 181.

[74] *Id.* SUMF ¶ 182.

[75] *Id.* SUMF ¶ 180.

[76] *Id.* SUMF ¶ 184; ECF Doc. No. 16-3, Appendix 500.

[77] ECF Doc. No. 16-3, Appendix 500.

[78] ECF Doc. No. 16-3, Appendix 501.

[79] *Id.*

[80] *Id.* Appendix 504.

[81] *Id.* Appendix 500.

---

[82] *Id.*

[83] ECF Doc. No. 16-2, SUMF ¶ 189.

[84] ECF Doc. No. 16-2, SUMF ¶ 124; ECF Doc. No. 16-3, Appendix 503.

[85] ECF Doc. No. 16-3, Deposition of J. Amos at 83, Appendix 160.

[86] *Id.* Deposition of J. Amos at 84, Appendix 161.

[87] ECF Doc. No. 16-2, SUMF ¶ 102.

[88] ECF Doc. No. 19-2, Response to SUMF ¶ 102.

[89] *Id.* Response to SUMF ¶¶ 104-05, 108-09, 113-14, 116.

[90] ECF Doc. No. 16-2, SUMF ¶ 93.

[91] ECF Doc. No. 19-2, Response to SUMF ¶ 93.

[92] *Id.* Response to SUMF ¶ 72.

[93] *Id.* Response to SUMF ¶¶ 73-77.

[94] *Id.* Response to SUMF ¶ 94.

[95] ECF Doc. No. 16-3, Deposition of M. O'Donnell at 33-36, Appendix 308.

[96] *Id.*

[97] *Id.*

[98] ECF Doc. No. 16-2, SUMF ¶ 100.

[99] ECF Doc. No. 16-3, Appendix 476-78.

[100] ECF Doc. No. 19-2, Cameron-Satchell SUMF ¶ 299; ECF Doc. No. 16-3, Appendix 477. Vice President Amos asked Ms. Cameron-Satchell "[h]elp me to understand why you felt it appropriate to include anyone other than me or possibly [Human Resource Generalist Jackson] on this?" ECF Doc. No. 16-3, Appendix 477.

[101] *Id.* Deposition of M. O'Donnell at 53-56, Appendix 313.

[102] *Id.* Deposition of J. Amos at 91, Appendix 162; Deposition of M. O'Donnell at 56, Appendix 313.

[103] *Id.* Deposition of J. Amos at 89-90, Appendix 162.

[104] *Id.* Deposition of B. Jackson at 55-56, Appendix 205-06.

[105] ECF Doc. No. 16-2, SUMF ¶ 125.

[106] ECF Doc. No. 19-2, Response SUMF ¶ 125.

[107] ECF Doc. No. 16-3, Appendix 523-530.

[108] Title VII prohibits an employer from discriminating based, among other protected classes, race, 42 U.S.C. § 2000e-2(a), and from retaliating against an employee for complaining about or reporting discrimination. *Id.* § 2000e-3(a).

[109] We dismissed with prejudice Ms. Cameron-Satchell's aiding and abetting claim under PHRA section 955(e) against Practice Manager Murphy on the parties' stipulation. ECF Doc. No. 15.

[110] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[111] 411 U.S. 792 (1973).

[112] The elements of a claim of race-based employment discrimination under Title VII and section 1981 are "generally identical" and are analyzed in the same way. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009)) (Title VII and section 1981). Similarly, "[c]laims under the PHRA are

"interpreted coextensively with Title VII claims …" *Brown*, 581 F.3d at 179, n.1 (quoting *Atkinson v. Lafayette College* 460 F.3d 447, 454, n.6 (3d Cir. 2006)). The Supreme Court recently clarified a plaintiff "must initially plead and ultimately prove that, ***but for***, race, [she] would not have suffered the loss of a legally protected right" under section 1981. *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S.Ct. 1009, 206 L.Ed 2d 356 (2020) (emphasis added).

[113] *Ellis v. Bank of New York Mellon Corp.*, 837 F. App'x 940, 941 (3d Cir. 2021) (quoting *McDonnell Douglas*, 411 U.S. 792 at 802).

[114] *Hernandez v. Wal-Mart*, 844 F. App'x 598, 600 (3d Cir. 2021) (citing *In re Tribune Media Co.*, 902 F.3d 384, 401 (3d Cir. 2018)).

[115] Ms. Cameron-Satchell responds Children's Dental consistently promoted her, valued her "legacy knowledge of the company" and knowledge of practice management software, and never disciplined her performance.

[116] Children's Dental also argues if Ms. Cameron-Satchell challenges her transfer from the Regional Manager position to Operations Assistant, it is not an adverse employment action. Ms. Cameron-Satchell did not plead the transfer constitutes an adverse employment action. Her complaint identifies termination as the adverse employment action giving rise to her race-based discrimination claim. ECF Doc. No. 1, Compl. ¶¶ 20, 32-35. She characterized her transfer to the Operations Assistant position as a promotion. She cannot amend her complaint through her brief in opposition to summary judgment to now challenge the transfer from Regional Manager to Operations Assistant. *Amboy Bancorporation v. Bank Advisory Grp.*, 432 F. App'x 102, 111 (3d Cir. 2011). At oral argument, her counsel confirmed the adverse employment action is termination from the Operations Assistant position.

[117] *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014) (citing *Sarullo v. U.S. Postal Serv.*, 325 F.3d 789, 797 n.7 (3d Cir. 2003)); *Drummer v. Hosp. of Univ. of Pa.*, 455 F. Supp. 3d 160, 168 (E.D. Pa. 2020) (quoting *Greene*, 557 F. App'x at 195).

[118] *Wilson v. Blockbuster, Inc.*, 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008) (citing *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000)).

[119] *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018).

[120] *See e.g., Wright v. Providence Care Center, LLC*, 822 F. App'x 85, 92 (3d Cir. 2020).

[121] ECF Doc. No. 19-1 at 7.

[122] *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).

[123] *Carvalho-Grevious*, 851 F.3d at 257 (quoting *Moore*, 461 F.3d at 342).

[124] *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021).

[125] *Moore*, 461 F.3d at 341.

[126] *Kengerski*, 6 F.4th at 536 (citing *Moore*, 461 F.3d at 341).

[127] *Curay-Cramer v. Ursuline Academy of Wilmington, De., Inc.*, 450 F. 3d 130, 135 (3d Cir. 2006).

[128] *Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 596-97 (E.D. Pa. 2009).

[129] *Id.* (quoting *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 628 (5th Cir. 2008)).

[130] *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007).

[131] *Id.* (quoting *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 280 (3d Cir. 2000).

[132] *Id.* (quoting *Farrell*, at 279-81).

[133] *Dondero v. Lower Milford Twp.*, 5 F. 4th 355, 361-62 (3d Cir. 2021) (five-month gap not unusually suggestive temporal proximity) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (two days is sufficiently proximate) and *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three weeks insufficiently proximate)).

[134] *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015).

[135] 795 F.3d 297 (2d Cir. 2015).

[136] *Id.* at 318 (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)).

[137] *Id.* (citing *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)). Children's Dental argues *Littlejohn* is not applicable because the district court dismissed retaliation claims at the motion to dismiss stage rather than the summary judgment stage. At the summary judgment stage, Ms. Cameron-Satchell must do more than plausibly allege a retaliation claim; she must meet her burden of proving a prima facie case.

[138] ECF Doc. No. 16-3, Deposition of J. Amos at 58-59, Appendix 154.

[139] ECF Doc. No. 19-2, Response to SUMF ¶ 93; ECF Doc. No. 16-3, Deposition of J. Amos at 60-63, Appendix 155.

[140] ECF Doc. No. 16-2, SUMF ¶¶ 190-253; ECF Doc. No. 16-1 at 21.

[141] At oral argument, Ms. Cameron-Satchell's counsel conceded the report about the food at breakfast occurred "earlier on." The alleged complaint about a Muslim employee's complaints about food is unidentified in time in Ms. Cameron-Satchell's briefing. There is no evidence Ms. Cameron-Satchell raised this complaint, even assuming it involves discriminatory conduct, to Children's Dental management. We cannot determine temporal proximity to her February 5, 2018

termination as to be unusually suggestive of causation. Ms. Cameron-Satchell must cite other evidence sufficient to raise the inference of a causal link. She did not do so.

[142] 109 F.3d 173 (3d Cir. 1997).

[143] *Id.* at 177.

[144] *Id.* at 178.

[145] *Id.*

[146] *See LeBoon,* 503 F.3d at 232; *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007).

[147] *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017).

[148] *Id.* (citing *LeBoon*, 503 F.3d at 233).

[149] ECF Doc. No. 16-3, Deposition of D. Cameron-Satchell at 317-18, Appendix 81-82.

[150] ECF Doc. No. 16-3, Appendix 476.

[151] ECF Doc. No. 16-2, SUMF ¶¶ 99-101.

[152] ECF Doc. No. 16-3, Appendix 473-74.

[153] *Id.*

[154] *Id.*

[155] ECF Doc. No. 16-3, Deposition of D. Cameron-Satchell at 253-54, Appendix 65-66.

[156] ECF Doc. No. 19-3, Declaration ¶ 19.

[157] *Carvalho-Grevious*, 851 F.3d at 259 (quoting *Kachmar*, 109 F.3d at 177).

[158] ECF Doc. No. 19-1 at 19-21.

[159] ECF Doc. No. 16-3, Appendix 504.

[160] *Id.* Deposition of B. Jackson at 25-33, Appendix 198-200. Human Resource Generalist Jackson swore to eight EEOC claims brough during her tenure at Children's Dental.

[161] *LeBoon*, 503 F.3d at 232-33.

[162] *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

[163] *Willis*, 808 F.3d at 644–45 (quoting *Fuentes*, 32 F. 3d at 764).

[164] *Peake v. Pa. State Police*, 644 F. App'x 148, 152–53 (3d Cir. 2016) (quoting *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644–45 (3d Cir. 1998)).

[165] *Carvalho–Grevious*, 851 F.3d at 257–58. *See also Watson v. Pa., Dep't of Revenue,* 54 F. App'x 440, 442 (3d Cir. 2021) (applying *Carvalho-Grevious* "but-for" causation to FMLA retaliation claim).

[166] *Carvalho-Grevious*, 851 F.3d at 258.

[167] ECF Doc. No. 19-2, Cameron-Satchell SUMF ¶¶ 310-12.

[168] ECF Doc. No. 16-3, Appendix 468.

[169] *Id.* Deposition of D. Cameron-Satchell at 282-85, Appendix 73.

[170] *Id.* Deposition of J. Amos at 88-91, Appendix 162.

[171] *Willis*, 808 F.3d at 644–45 (quoting *Fuentes*, 32 F. 3d at 764).

[172] ECF Doc. No. 16-3, Deposition of M. O'Donnell at 49, Appendix 312.

[173] In *Carvalho-Grevious*, our Court of Appeals held at the prima facie stage of a retaliation claim, a plaintiff "need only proffer evidence sufficient to raise the inference that her engagement in a protected activity was the *likely reason* for the adverse employment action, not the but-for reason." *Carvalho-Grevious*, 851 F.3d at 253, 257, 258-59 (emphasis in original). If a plaintiff establishes a prima facie case, she retains the "ultimate burden" of proving but-for causation on a Title VII retaliation claim. *Id.* at 258-59. We do not apply "but-for" causation to Ms. Cameron-Satchell's prima facie case. We conclude she fails to meet her burden at summary judgment to show disputed fact on her ultimate burden of proving but-for causation on her retaliation claim.

[174] *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995).